# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA | : CRIMINAL ACTION |
| v. | : |
| ROBERT HERNANDEZ<br>(a/k/a "FELIX AGOSTA") | : NO. 09-244 |

## MEMORANDUM

GENE E.K. PRATTER, J.                                                                             SEPTEMBER 18, 2020

Robert Hernandez (a/k/a Felix Agosta),[1] pled guilty in November 2009 to the crime of possession of a firearm by a convicted felon.  With a criminal history "point" score of nine, Mr. Agosta was then in a Criminal History Category IV. He was sentenced to serve a prison term of 102 months, followed by three years of supervised release.  Mr. Agosta first started his supervised release in late June 2016.  Among the various standard conditions applicable to Mr. Agosta was the admonition to refrain from the commission of any federal, state or local crimes. Mr. Agosta's conduct while on supervised release has had setbacks, leading to two revocations. Most recently Mr. Agosta's supervision had recommenced in July 2019.

On March 14, 2020 Philadelphia police personnel arrested Mr. Agosta, and he was charged with manufacture, delivery or possession with intent to manufacture or deliver a controlled substance and conspiracy and intent to possess a controlled substance by a person not

---

[1] The defendant's birth name is Felix Agosta. To respect the defendant's apparent name preference and for consistency, this Memorandum and the accompanying order will refer to Defendant by his given name, to wit, Felix Agosta.

1

registered. Mr. Agosta's supervising probation officer notified the Court of the possible violation by Mr. Agosta of his supervised release obligations. Philadelphia authorities released Mr. Agosta, and the date for any possible prosecution by local authorities remains an open question. However, due to a previously outstanding federal supervised release warrant, Mr. Agosta was remanded to federal custody and, thereafter, ordered detained pending a federal violation of supervised release hearing.

The Court conducted a hearing on the alleged violation during which the defendant agreed that he had violated the condition of his supervision that obligated him to regularly report to his probation officer, but he disputed that he had committed a crime on or about March 14, 2020 as alleged. The Government proceeded to present evidence as to Mr. Agosta's March 14, 2020 activities which, the Government contends, constitute a violation of release conditions.

Specifically, the Government presented two Philadelphia police officers who had been among the approximately ten to 12 undercover, plain clothes and uniformed police personnel present on the Saturday morning in question in the area of 2900 Orkney street in Philadelphia. This was a location, as described by witness Officer Ernest Brown, that was rife with sellers and buyers of heroin, cocaine and marijuana. The officer's testimonial description was graphic: "They sell everything. It's like Walmart. This is like a real deal block.... I've been on a lot of drug blocks. It's a really busy block. . . It's a really busy block." (9/8/20 N.T. at 29). Officer Brown identified Mr. Agosta as one of about 18 non-law enforcement people present on the block at the time the officer was engaged in an undercover buy of heroin. Based on the officer's interactions with three individuals, namely, two young African American men and a young woman, Officer Brown described Mr. Agosta at the time as situated located about three or four feet from the people from whom the officer was making the buy. Officer Brown had no specific

2

recollection of any interaction with Mr. Agosta other than, he believed, hearing Mr. Agosta say in a declarative fashion to no one in particular the single word "dope".

Officer Brown was candid in saying that he formed no sense, one way or the other, that Mr. Agosta was working with the sellers with whom the officer was transacting the drug buy. Officer Brown did not see Mr. Agosta engage in any transaction of any sort. He did not observe the subsequent search of Mr. Agosta after Mr. Agosta was detained and arrested; nor did Officer Brown see what material was seized from him. Once he had made the heroin buy, Officer Brown gave his law enforcement colleagues, who were awaiting notification that the buy had been made, a description of two young African American men with whom he had dealt, of a young woman who was with the two and of "a Latino male" who had been near-by, the latter being Mr. Agosta. Officer Brown testified that he had not made any previous drug buys from Mr. Agosta.

The other officer who testified at the violation hearing, Officer Bryan Sumter, was not personally involved in the undercover buy. He came to the scene to assist in effectuating the arrest after the drug buy at issue. Officer Sumter did not see the transactions; nor did he conduct the search of Mr. Agosta. Rather, Officer Sumter testified that he observed that Mr. Agosta had started to run from the scene and agents then stopped him and seized from him "four clear baggies each containing 30 yellow containers of alleged crack cocaine, one clear baggy containing 11 yellow containers of alleged crack cocaine, a clear knotted baggy containing three bundles of 16, 17, 17 clear packets' each packet containing a blue glassine packet stamped 'Five Below' each containing alleged heroin. Also two bundles of 16 and one of 18 and one bundle of nine, each clear packet containing again a blue glassine packet stamped 'Feeling Good' each containing alleged heroin, five clear packets each containing a blue glassine packet stamped

3

'Five Below' each containing alleged heroin and a white wrapper containing another ten bundles, each bundle containing 16 clear packets again containing a blue glassine packet stamped 'Feeling Good' each containing alleged heroin." The officer's testimony was verbatim of the information set forth in the arrest report. Mr. Agosta also had $180 in cash on his person which was seized. Officer Sumter recounted this information which he received from the arresting officers in an arrest report ("PARS")[2]. He did not identify by name the officer or officers who searched Mr. Agosta. Later, at police headquarters, Officer Sumter performed field tests on the contents of a number of the containers seized from Mr. Agosta which reflected positive results for heroin and cocaine.

## DISCUSSION

The issue presented here is whether a preponderance of the evidence[3] has been presented to the Court to sustain the finding of a violation by Mr. Agosta of the familiar condition of his supervised release that he not commit a crime. To be sure, the Court has grave concerns about Mr. Agosta's conduct on March 14, 2020, and even the strong instinct, along with common sense developed over the course of a number of years of judicial service in controlled substance cases, that Mr. Agosta was engaged in conduct that would violate conditions of his supervised release. However, instinct, judicial common sense and understandable concern, individually or altogether, do not replace evidence on a record such as this.

The applicable standard of proof in terms of quantity of evidence in a revocation-of-release case is preponderance of the evidence. In terms of quality, revocation decisions can be

---

[2] No other witnesses testified. The PARS report was admitted into evidence.

[3] Both the Government and the defense acknowledged that hearsay is permitted to be weighed in a violation of supervised release hearing and that the operative standard of proof is preponderance-of-the-evidence.

based on hearsay and other evidence that would ordinarily be inadmissible at a trial. Nonetheless, certain fundamental principles do apply.

"[W]hile the preponderance of the evidence is not a high standard of proof, '[i]t is not, however, a toothless standard, either. . . <u>United States v. Cicirello</u>, 301 F.3d 135,142 (3rd Cir. 2002) (quoting <u>United States v. Askew</u>, 193 F.3d 1181, 1183 (11th Cir. 1999). Moreover, where "evidence [is] 'in equipoise,' the government ha[s] failed to meet its burden and [ ] enhancement [is] inappropriate." <u>Id</u> (quoting <u>Askew</u>, 193 F. 3d at 1185).

"Although [preponderance of the evidence] is a lower standard than the 'beyond a reasonable doubt' standard required for a criminal conviction, there must still be credible evidence the releasee actually violated the terms of supervised release." <u>United States v. Perez</u>, 526 F.3d 543, 547- 48 (9th Cir. 2008) (holding that mere fact that a defendant left a drug testing station did not show that defendant "refused" to submit to testing where defendant testified that he merely forgot.)

Here, the Court fully understands the Government's dilemma and multiple goals in seeking to protect the public and engender respect for the supervision rubric without having any confidence as to what, if anything, local authorities may do with respect to possible criminal conduct by a releasee.[4] Nonetheless, or perhaps because of that very dilemma, it behooves the Government to be mindful that there are evidentiary expectations that need to be met. With

---

[4] When the federal prosecutors can expect local authorities to respond to alleged criminal conduct by a federal releasee, frequently, in the Court's experience, the federal authorities have been prepared to accept the results of a local prosecution as also being determinative of a federal violation of supervised release conditions. Ironically, however, the safeguards of the high standard of proof and admissibility requirements that a defendant would have if the local authorities pursue a prosecution (plus, perhaps, less severe punishment) are lost to the defendant when local authorities do not respond. Then, the federal prosecutors and/or probation officials may feel it appropriate to respond by way of a violation proceeding with the attendant lower standards. The result for the defendant may well be incarceration for longer or for the same period, but as a result of different criminal prosecution safeguards.

5

respect to Mr. Agosta's conduct, the only evidence presented to the Court was the testimony of the two officers (both of whom acquitted themselves entirely professionally, credibly and forthrightly) and the PARS report. From that evidence the record only actually supports the conclusions that Mr. Agosta was present - - albeit within a few feet - - where an undercover purchase of drugs transpired and he was heard to utter to no one in particular the word "dope," that being equally susceptible to possible acquisitive interest, an offering of product, or a mere observation, among other potential meanings. The word "dope" then is left in an entirely ambiguous posture of "equipose." The evidence also includes the observation that Mr. Agosta ran from the location of the arrests of others and, finally, the inventory of the substances seized from him. No expert testified as to whether the type, packaging or quantity of the drugs seized from Mr. Agosta is indicative of sales efforts or for personal use.[5] No witness provided any more conduct-oriented evidence about Mr. Agosta. Nothing, then, other than geographic proximity to drug sellers, his presence at a notoriously active drug-deal locale and his possession of a quantity of drugs and cash related to Mr. Agosta. In the absence of any other documentary or testimonial evidence, the evidence on the record must stand alone because the Court will not supply opinions advanced by witnesses who have testified in the Court's presence in other cases having nothing to do with Mr. Agosta.

## CONCLUSION

Mr. Agosta may well have violated a condition of his supervision on the morning of March 14, 2020 on the 2900 block of Orkney Street in Philadelphia. But the evidence presented

---

[5] The previous Presentence Investigation Report concerning Mr. Agosta refers to some previous substance abuse by and a tempted drug treatment for Mr. Agosta, though not at any acute or severe chronic levels.

to the Court on September 8, 2020 does not suffice to permit such a conclusion.

BY THE COURT:

*[signature]*

GENE E.K. PRATTER
United States District Judge